CASE NO. 24-2237

United States Court of Appeals for
The Fourth Circuit

JEFFREY PAYNE,

*Plaintiff-Appellant*,

**vs.**

SGT. JOSHUA MOSER,

*Defendant-Appellee*.

*On Appeal from the United States District Court*
*for the Eastern District of Virginia (Alexandria Division)*

*Case No. 1:24-cv-00398-MSN-WEF (Hon. Michael S. Nachmanoff, Judge)*

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

/s/ *Andrew O. Clarke*
Andrew Omar Clarke
District Legal Group, PLLC
163 Waterfront Street, Suite 440
National Harbor, MD 20745
Tel: 202-780-9144
Email: aclarke@districtlegalgroup.com
*Counsel for Plaintiff-Appellant*

May 30, 2025

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1,

Plaintiff-Appellant Jeffrey Payne makes the following disclosure:

   i.   Is party/amicus a publicly held corporation or other publicly held entity?

   No.

   ii.   Does party/amicus have any parent corporations? If yes, identify all parent corporations, including grandparent and great-grandparent corporations.

   No.

   iii.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? If yes, identify all such owners.

   No.

   iv.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? If yes, identify entity and nature of interest.

   No.

   v.   Is party a trade association? (amici curiae do not complete this question) If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member.

   No.

   vi.   Does this case arise out of a bankruptcy proceeding? If yes, identify any trustee and the members of any creditors' committee.

   No.

Date: 05/30/25     <u>/s/ Andrew O. Clarke, Esq.</u>, Attorney for Jeffrey Payne

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ................................................................... ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ....................................................................v

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................2

STATEMENT OF THE CASE ................................................................3

FACTUAL BACKGROUND ..................................................................3

PROCEDURAL HISTORY ....................................................................6

GENUINE DISPUTE OF MATERIAL FACTS .........................................7

SUMMARY OF ARGUMENT................................................................9

STANDARD OF REVIEW....................................................................9

ARGUMENT ....................................................................................10

I.      The District Court erred in granting Summary Judgment as to Mr. Payne's Count I claim for Excessive Force under the Fourth Amendment, where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Payne ...........................................................10

II.     The District Court erred in granting Summary Judgment as to Mr. Payne's Count 2 claim for Unlawful Search and Seizure under the Fourth Amendment, where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Payne.................................17

III.    The District Court erred in granting Summary Judgment as to Mr. Payne's Count 3 claim for Gross Negligence under State law, where it did not view

the evidence and draw all reasonable inferences in the light most favorable to
Mr. Payne ..................................................................................................19

CONCLUSION ...........................................................................................20

REQUEST FOR ORAL ARGUMENT..................................................20

CERTIFICATE OF COMPLIANCE ...................................................21

# TABLE OF AUTHORITIES

## Cases

*Aka v. Washington Hosp. Ctr.*,
156 F.3d 1284 (D.C. Cir. 1998)……………………………………………...10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ……………………………...…………………………...10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)……………………………………………………………...10

*Cummings v. Dep't of the Navy*,
279 F.3d 1051 (D.C. Cir. 2002)…………………………………………………...10

*Graham v. Connor*,
490 U.S. 386 (1989)...……………………………………………………11, 16

*Rasul v. Myers,*
*512 F.3d 644 (D.C. Cir. 2008)*…...……………………………………..9

*Reeves v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133 (2000) *)*…...……...………………………………………...10

*Tennessee v. Garner*,
471 U.S. 1 (1985) *)*…...……...….....………………………………………..11

*Yates v. Terry*,
817 F.3d 877 (4th Cir. 2016)…...……...……………………………………11, 16

## Statutes

28 U.S.C. § 1291 ....................................................................................................2

28 U.S.C. §1331 ....................................................................................................1

28 U.S.C. §1367 ....................................................................................................1

28 U.S.C. §1391 ........................................................................1

42 U.S.C. §1983 ...............................................................1, 2, 3

**Other Authorities**

Fed. R. of App. P. 28(a) ........................................................1

Fed. R. App. P. 32(a) ...........................................................21

Fed. R. Civ. P. 56(a) ............................................................10

## JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a)(4) and Rule 28(a), Plaintiff-Appellant Jeffrey Payne ("Mr. Payne" or "Appellant") makes the following statement concerning jurisdiction.

Basis for District Court Jurisdiction.  This case is an action authorized and instituted pursuant to 42 U.S.C. §1983 to redress the deprivation of Appellant, Jeffrey Payne's rights pursuant to the statute and under the United States Constitution. The United States District Court for the Eastern District of Virginia, Alexandria Division, had original jurisdiction over this matter under 28 U.S.C. §1331, as it involves a federal question regarding the violation of civil rights under the Fourth and Fourteenth Amendments, and violation of Federal Statute. Additionally, the court exercised supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. §1367.

Venue was proper in the Eastern District of Virginia under 28 U.S.C. §1391, as all events giving rise to the claims occurred in Fairfax County, Virginia, where the Defendant-Appellee, Sgt. Joshua Moser, was employed and acted under the color of law in his official capacity as a police officer with the Fairfax County Police Department.

The appeal challenges the district court's rulings on the grounds that Sgt. Moser's actions constituted a violation of Mr. Payne's constitutional rights, as

1

protected by 42 U.S.C. §1983, and seeks redress for the injuries and damages sustained as a result of these violations.

Basis for Court of Appeals Jurisdiction. This Court has jurisdiction of the appeal from the final decision of the District Court pursuant to 28 U.S.C. § 1291. The District Court issued a Final Order granting summary judgment on November 19, 2024.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Whether the District Court Judge erred by granting Summary Judgment as to Count I, Fourth Amendment Use of Force, where it failed to view the evidence and draw all reasonable inferences in a light most favorable to Mr. Payne.

2.  Whether the District Court Judge erred by granting Summary Judgment as to Count II, Fourth Amendment Unlawful Search and Seizure, where it failed to view the evidence and draw all reasonable inferences in a light most favorable to Mr. Payne.

3.  Whether the District Court Judge erred where granted Summary Judgment to Count III, State Law Violated Under Gross Negligence, where it failed to view the evidence and draw all reasonable inferences in a light most favorable to Mr. Payne.

## STATEMENT OF THE CASE

Appellant Jeffrey Payne ("Appellant," or "Payne") is appealing the decision from The United States District Court for the Eastern District of Virginia. In the lower court, Appellant alleged that Appellee, Sgt. Joshua Moser violated his civil rights under 42 U.S.C. §1983 by using (1) excessive force (Count I), (2) conducting an unreasonable search and seizure (Count II), and (3) violating state law under gross negligence (Count III). [JA007].

On appeal, Appellant is seeking a reversal decision, seeking compensatory damages for injuries sustained and reputational harm, as well as declaratory and injunctive relief, from Appellee, Sgt. Joshua Moser.

## FACTUAL BACKGROUND

On the night of August 3, 2022, Mr. Payne was operating his vehicle, with a passenger, when plain clothes members of Fairfax County Police Department Street Crimes Unit in an unmarked all-black Ford F-150 with heavily tinted windows began to follow him. [JA009], [JA277 - 278]. Mr. Payne turned into the parking lot of a Home Depot that was in a shopping mall in Falls Church, Virginia, when the F-150 began following him as he reached the loading dock side of the Home Depot. [JA010], [JA276 - 277].

An eighteen-wheeler was parked blocking Mr. Payne from driving any further. *Id.* At that point Mr. Payne and the F-150 both came to a complete stop. *Id.*

3

Mr. Payne was waiting for pedestrians to walk past the parked eighteen-wheeler so that he could drive around the trailer and go towards the entry and exit to the Home Depot parking lot and the main road. *Id*.

As Mr. Payne began to exit the parking lot, the F-150 pulled up alongside his car and struck his vehicle. *Id.* Unaware that the F-150 was a police vehicle Mr. Payne tried to drive away, believing that it may have been someone who wanted to rob him or otherwise hurt him. [JA278]. The F-150 struck Mr. Payne's vehicle two more times. [JA010], [JA278 - 279]. The final strike was on Mr. Payne's left rear bumper causing his vehicle to spin out of control. [JA279]. After Mr. Payne's vehicle came to a rest, he immediately saw a flash of light coming from behind his vehicle and heard something break. [JA011], [JA 280]. Mr. Payne's left rear passenger window had been shot out and Mr. Payne was struck by the bullet in his left arm. *Id*. At this point, Sgt. Moser, nor anyone else had identified themselves as law enforcement. *Id*. Mr. Payne, only saw the police lights on the F-150 after he was shot. [JA296].

Sgt. Moser, shot through the window despite the fact that the windows were tinted and he was unable to identify who was in the driver and passenger seats. *Id.* Mr. Payne was shot without any probable cause, warning, or justification. Nonetheless, the unidentified members of the police force kept giving Mr. Payne commands to stop reaching, raise his hands, and throw out the gun. [JA280 - 281]. Appellee gave a sworn declaration he used a lighting kit to see into Appellant's

4

vehicle. [JA407]. Mr. Payne answered on several occasions, saying that he did not have a gun, he could not move, he had been shot, and he was bleeding. [JA281 – 282]. At the time of the accident Mr. Payne's right arm was in a cast and immobilized on his chest. [JA290]. So along with his left arm being shot there was no way that his arms could move in the moment.

Mr. Payne was bleeding in his vehicle when unidentified members of the police department pulled the front seat passenger out of the vehicle. [JA011], [JA296]. While another unidentified officer was pointing his firearm directly at Mr. Payne through the front windshield and screaming, "he got a gun" repeatedly. [JA312].

Mr. Payne was never armed with a firearm at any point during his interaction with law enforcement. Furthermore, Mr. Payne repeatedly responded, "I don't have a gun." [JA281 - 282]. Despite these efforts by Mr. Payne to assure Appellee and the fellow officers of their safety, and that he was bleeding, *Id.*, the officers ignored Appellant while continually screaming at Mr. Payne to throw the gun out and to raise his hands or they were going to shoot him again. [JA011], [JA012], [JA283].

Once more personnel were on scene an unidentified officer began to yank Mr. Payne out of his vehicle while his seatbelt was still on and by his arms despite just being shot in the left arm, and his right arm being in a cast due to recent surgery. [JA012], [JA311]. The officers eventually cut Mr. Payne's seatbelt, removed him

from the vehicle, and pulled his pants and underwear down in the middle of street and searched Mr. Payne's groin area and searched his anus for a firearm. [JA313]

The officers never retrieved a firearm for Mr. Payne's person or for Mr. Payne's vehicle. After, Mr. Payne was taken to the ambulance on scene. The bullet was not removed from Mr. Payne's arm at the directive of Fairfax County detectives and Mr. Payne was transported to Alexandria County jail. [JA318]. Mr. Payne's left arm continued to bleed, and a strong odor began to come from the bullet wound. [JA290]. None of the Fairfax County Officers were equipped with Body Worn Camera or Dash Camera footage during the August 2, 2022, incident. [JA252].

## PROCEDURAL HISTORY

On March 13, 2024, Mr. Payne timely filed a Complaint in the U.S. District Court for the Eastern of Virginia alleging violations of the Fourth and Fourteeth Amendments, and Gross Negligence under state law. (Case No. 1:24-cv-00398-MSN-WEF). Appellant amended his complaint on or around April 16, 2024. Appellee filed a Motion to Dismiss all of Appellant's claims. On May 8, 2024, Appellant timely filed a Memorandum in Opposition of Appellee's Motion to Dismiss. The Court granted Appellee's Motion to Dismiss on May 14, 2024, as to Appellant's claims against Appellee in his official capacity, and the Fourteenth Amendment claims within Counts I and II. Subsequently Appellee filed a Motion for Summary Judgment as to Appellant's remaining claims. On November 19, 2024,

the Court issued an order granting Summary Judgment as to Appellant's claims against the Appellee in his individual capacity for Fourth Amendment Use of Force (Claim I) and Fourth Amendment Unlawful Search and Seizure (Claim II), and also Gross Negligence (Claim III).

**GENUINE DISPUTE OF MATERIAL FACTS**

There are genuine disputes of material facts as to what really occurred on the night of August 2, 2022. First, Sgt. Joshua Moser, did not alert Mr. Payne of his status as a police officer, and instead followed Mr. Payne in an unmarked vehicle without initiating the sirens and lights on the truck. [JA276 - 284]. Second, Appellee and officers of the Street Crimes Unit improperly used tactics to subdue Appellant's vehicle while Appellant was not evading law enforcement because he was unaware that they were police officers. [JA296].

On the loading dock side of Home Depot, an eighteen-wheeler trailer was parked blocking Mr. Payne from driving any further. [JA277]. At that point, Mr. Payne and the F-150 both came to a complete stop. *Id*. Mr. Payne was waiting for pedestrians to walk past the parked eighteen-wheeler trailer so that he could drive around the trailer and go towards the entry and exit to the Home Depot parking lot and the main road. *Id*

Appellee, Joshua Moser, and officers of the Street Crimes Unit at this point did not alert Appellant of their status as law enforcement, [JA280], instead using

tactics to disable Mr. Payne's vehicle without identifying themselves as police officers. [JA296]. Just seconds later, Appellee, Joshua Moser, acted recklessly, negligently, and unreasonably when he opened fire into a vehicle with tinted windows and two unarmed individuals. [JA210], [JA281]. Appellee Joshua Moser and the Street Crimes Unit were not even sure if the passenger in the vehicle was a man or a woman. [JA209]. Appellee Moser was unreasonable in his belief that Mr. Payne was armed.

Mr. Payne intentionally, knowingly, and consciously alerted officers he was unarmed on numerous of occasions. [JA281 - 285]. Despite the repeated efforts by Mr. Payne to assure Appellee and the fellow officers of their safety, and that he was bleeding, *Id.*, the officers ignored Appellant while continually screaming at Mr. Payne to throw the gun out and to raise his hands or they were going to shoot him again. [JA011], [JA012], [JA283].

Appellee stated in sworn declaration he discharged the firearm because Appellant's arm was up. [JA408]. This is not an accurate depiction of what occurred according to Appellant's deposition. Mr. Payne intentionally, knowingly, and consciously alerted officers he was unarmed on numerous of occasions. [JA281]. Despite Mr. Payne's responses, a plain clothed officer stated "If you don't fucking comply, you're going to die today" [JA284 - 285]. There was no reasonable fear apparent, as Appellant was blocked in by Appellee and additional law enforcement

vehicles, bleeding out in his own vehicle, while his right arm was in a hard cast at the time Appellee "reasonably thought" himself and others were in imminent threat for approximately ten (10) to thirteen (13) minutes. [JA282].

No thorough investigation was done. Hector, the confidential informant, was arrested on August 2, 2022, and arranged a buy on that same day. If even a scintilla of investigation were done, Moser would have confirmed the cast on Mr. Payne's right arm. This would make it impossible for Mr. Payne to reach for or hold a firearm. [JA404].

## SUMMARY OF ARGUMENT

Appellant is appealing the District Court's ruling on the motion for summary judgment for excessive force, unreasonable search and seizure, failure to follow protocol and de-escalation, and violation of constitutional rights. Appellant has met the burden of stating a claim and proving a prima facie case for the above-mentioned issues. The Court failed to view the evidence and draw all reasonable inferences in a light most favorable to Appellant. The Court should have denied Appellee's Motion for Summary Judgment.

## <u>STANDARD OF REVIEW</u>

**I.    Summary Judgment**

The Court of Appeals' review of a grant of summary judgment is *de novo*, applying the same standard that the District Court had to apply. *Rasul v. Myers*, 512 F.3d 644 (D.C. Cir. 2008) ("We review the district court's legal conclusions de novo.") (*citing Cummings v. Dep't of the Navy*, 279 F.3d 1051,1053 (D.C. Cir. 2002)). Summary judgment is warranted if, from the totality of the evidence, it appears that no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998). The Court must view the evidence, draw all reasonable inferences therefrom, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Neither the District nor the Court of Appeals may resolve disputed facts, nor weigh the evidence, nor make determinations of credibility. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). The relevant inquiry is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## <u>ARGUMENT</u>

**I.     The District Court erred in granting Summary Judgment as to Mr. Payne's Count I claim for Excessive Force under the Fourth Amendment, where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Payne.**

In granting the Motion for Summary Judgment and dismissing Count I of Mr. Payne's Complaint based on Sgt. Moser's individual violation of Mr. Payne's Fourth Amendment Rights, the District Court erred where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Payne.

The District Court concluded that there was no genuine dispute of material fact that Sgt. Moser used an objectively reasonable amount of force to effectuate the Mr. Payne's arrest. [JA441]. In so holding, the District Court found that the Appellant did not meet his burden. However, viewing the evidence and drawing all reasonable inferences from them, in the light most favorable to Mr. Payne, this ruling was clearly in error.

Excessive force claims are bound by Virginia Code and the United States Constitution. These claims are viewed through an objective reasonable standard, rather than under a substantive due process standard. *See Graham v. Connor*, 490 U.S. 386, 388 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985). In applying

11

*Graham*, courts "focus on the facts and circumstances of each case, taking into account 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Yates v. Terry*, 817 F.3d 877, 885 (4th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). Notwithstanding probable cause to seize a suspect, an officer may not always do so by killing. *Garner*, 471 U.S. at 10. The intrusiveness of a seizure by means of deadly force is weighed against the governmental interests. *Id*. The use of deadly force is a self-defeating way of apprehending a suspect and so setting the criminal justice mechanism in motion. *Id*.

In its decision the District Court relied on three main issues to support its holding that there was no genuine issue of material fact: (1) It was reasonable for Sgt. Moser to use his firearm "because he relied on his training and experience to conclude that Appellant, a known possessor of narcotics was likely to be armed;" (2) The fact that Appellant had a cast on his arm had no impact on Sgt. Moser's reasonable perception that Appellant was reaching for a gun; and, (3) Appellant admitted in two interviews following the arrest that he heard sirens, thus undercutting his claim that he was not fleeing or evading arrest. [JA441 - 444].

Here, Mr. Payne, through evidence, has identified numerous disputes of material fact. The disputed facts are brought as a vehicle to apply to the holdings of the Court where a jury could have reasonably concluded that Sgt. Moser's use of a

firearm was unreasonable. There was little to no surveillance of Mr. Payne prior to the incident. [JA395], [JA404]. If Appellee and the Fairfax County Police Department's Street Crimes Unit would have surveilled Mr. Payne at any point prior to this incident, they would have discovered that it would have been impossible for Mr. Payne to hold a firearm with his right arm, since it was in a cast, making him less likely to pose a threat to officers. Sgt. Moser, and the rest of the Street Crimes Unit, did not conduct a thorough enough investigation to determine the credibility of the informant's statements. [JA404 - 405]. Without having much intelligence about Mr. Payne, Sgt. Moser and the Street Crimes Unit incorrectly concluded Mr. Payne would be armed and dangerous and conducted their operation as such. [JA404]. *Id.* This investigation lead to the excessive force used by Defendant against Mr. Payne. *Id.*

The police never initiated their sirens during the chase and Appellant did not know the police were attempting to stop him. [JA278 - 280]. Sgt. Moser immediately discharged his firearm into Appellant's truck after it was neutralized. Sgt. Moser shot through the back tinted window, striking the Appellant in his arm with the shot. [JA280]. Only after shooting Appellant did Sgt. Moser identify himself and begin addressing Appellant to "throw the gun out the window." *Id*. When Mr. Payne was searched following the incident he was found to be in possession of drugs, but no guns were found on him or recovered from the car. [JA398]. Mr. Payne never made

13

a threatening statement, or any gesture to Sgt. Moser or any of the officers who were on the scene. [JA280 – 295]. All of this raises material disputes over Sgt. Moser's claims that he saw Appellant reaching for something in the center console. [JA407], [JA408].

Despite the District Court's reliance on Appellee's assertions in his Motion for Summary Judgment that Appellant admitted in two interviews that he heard sirens, a careful review of those audio texts reveals otherwise. [JA443], [JA122 at 3:58, 14:22, and 15:28], [JA125 at :35, 5:11]. In these interviews, Mr. Payne is clearly saying that when the F-150 struck him a second time the lights came on. This is well after the chase began, and closer in time to when Mr. Payne states in his deposition that he first saw the lights which was after the vehicle was disabled and he was shot. It's clear from the facts recited above that there was extremely little time between Mr. Payne's car being struck the final time, spinning out, coming to a rest, him being shot, and identifying police sirens. It's worth noting these interviews were conducted mere hours after Mr. Payne was shot as well, which further raises concerns about their reliability. Furthermore, Mr. Payne was never charged with attempting to evade arrest.

Appellant's evidence further materially disputes Appellee's allegation that Mr. Payne was reaching for anything, let alone a firearm, while in his vehicle. It is undisputed Mr. Payne right arm was in a cast. [JA290]. It is also undisputed that Mr.

14

Payne's vehicle was pinned between vehicles utilized by officers of the Street Crimes Unit. [JA407]. ] Furthermore,  it is undisputed that no firearm was found on the scene. [JA398].

It is unclear when the police sirens were turned on. [JA278].  Appellant stated numerous times that he did not see sirens on the F-150 until after he had been shot. This includes the ten (10) to fifteen (15) seconds of sitting at the stop sign in the loading dock area behind the Home Depot. [JA276]. The evidence does not support Joshua Moser's statements as to what was said to Mr. Payne prior to shooting him. [JA407], [JA408]. In his deposition, Appellant stated that he did not know who was in the F-150 driving behind him. [JA277]. Appellant further stated that the police never initiated their sirens during the incident and that he did not know it was the police who were attempting to stop him. [JA278 – 280].

Despite these facts, the Court concluded that Appellant was aware that the police were pulling him over and that he was aware that the police had turned on their sirens. These facts are materially disputed. In Defendant's Reply to Plaintiff's Opposition Motion for Summary Judgment, the evidence relied upon by the Court contains several quotes given by Appellant in recorded statements. [JA410]. These statements purportedly show that Appellant was aware that the truck ramming his truck was the police because they turned on their sirens while ramming him. This statement is disputed by Appellant in his sworn deposition testimony. [JA278 – 280].

15

After Appellee and the Street Crime Unit used the Tactical Vehicle Intercepts ("TVI") method to spin out Appellant's vehicle, Appellant was stuck in his vehicle, preventing him from moving. [JA281]. This is a materially disputed fact as Appellee claims Appellant was able to move to reach towards the center console. Furthermore, it cannot be established that Appellant was evading arrest if Appellant was unaware that he was being stopped by the police. [JA276]. A reasonable juror, viewing the evidence provided by Appellant, could conclude that this inference is adverse to the Appellee position because there was insufficient evidence to establish that Appellant was trying to evade arrest or flee from police. *Id.* Mr. Payne continued to notify officers he did not have a gun, and he still could not raise his arm. *Id.*

Turning now to the Court's holding that Sgt. Moser's use of his firearm was objectively reasonable as a matter of law, there are material facts in dispute that challenge this holding as well. Courts "focus on the facts and circumstances of each case, taking into account 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Yates v. Terry*, 817 F.3d 877, 885 (4th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). First, this matter was not severe enough to warrant deadly force, where the crime Appellant was alleged to have committed, distribution of narcotics, is categorized as a nonviolent offense. [JA141]. Second, Appellant did not pose an immediate threat as he was

16

incapacitated, pinned in his car, and had a broken arm. *Id*. Third, Appellant was not actively resisting arrest or attempting to evade arrest by flight, as Appellant was unaware that he was being pursued by the police until they rammed his car and neutralized it. *Supra*.

The District Court found that Sgt. Moser "reasonably concluded that [Appellant] might be reaching for a gun and that other detectives lives were in danger." [JA442]. Viewing the totality of the evidence presented and drawing all reasonable inferences from the evidence in a light most favorable to Mr. Payne, this finding was in error. Mr. Payne's vehicle had tinted windows, and it would have been impossible for Sgt. Moser to identify Mr. Payne's movement prior to shooting out the window. Furthermore, Mr. Payne had been shot in one arm and was in a hard cast in the other hand and could not have possibly reached for anything in that situation. Mr. Payne was in verbal communication with Sgt. Moser advising that he did not have a gun and he was not reaching for a gun. Sgt. Moser conducted limited surveillance prior to the stop which would have revealed Mr. Payne was injured and unarmed.

Finally, although Sgt. Moser stated that he gave a verbal warning before shooting, [JA408], Mr. Payne states that he did not hear any verbal commands until after shots had been fired. [JA280].

17

Viewing the totality of the evidence presented and drawing all reasonable inferences from the evidence in a light most favorable to Mr. Payne, Mr. Payne has presented sufficient evidence to establish Sgt. Moser did not use an objectively reasonable amount of force to effectuate the Mr. Payne's arrest, and Appellee's Motion for Summary Judgment should have been denied.

## II. The District Court erred in granting Summary Judgment as to Mr. Payne's Count 2 claim for Unlawful Search and Seizure under the Fourth Amendment, where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Payne.

In granting the Motion for Summary Judgment and dismissing Count II of Mr. Payne's Complaint based on Sgt. Moser's individual violation of Mr. Payne's Fourth Amendment Right to be free from Unlawful Search and Seizure, the District Court erred where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Payne.

The District Court concluded that Sgt. Moser was not the detective who conducted the search of Appellant or his property following the shooting incident. [JA 443]. This finding, however, incorrectly limits the scope of Mr. Payne's claim. In his Amended Complaint, Mr. Payne asserted his right to be free from excessive force and unreasonable searches and seizures where Sgt. Moser used deadly force by "(1) ramming a Fairfax County Police Department unmarked black heavily tinted Ford F-150 into Mr. Payne's vehicle multiple times causing Mr. Payne to spin out of control, and (2) immediately discharging his weapon without reading in

18

commands, assessment of the situation and into a moving vehicle striking Mr. Payne in his left arm . . . ." [JA277 - 295].

Mr. Payne has rights afforded to him by the Fourth Amendment and the Fourteenth Amendment to the United States Constitution not to have his person or property unlawfully searched, seized, or detained in an unreasonable manner; not to be deprived of his liberty without due process of the law; and not to be subjected to excessive force during the course of his arrest.

The Court should review Count II *de novo.* Viewing the evidence and drawing all reasonable inferences from them, in the light most favorable to Mr. Payne, this ruling was clearly in error. Sgt. Moser detained Mr. Payne in an unreasonable manner, deprived him of liberty without due process of the law, and subjected him to excessive force during the course of his arrest. Without initiating his police lights or siren, Sgt. Moser rammed Appellant's truck causing it to spin out and become neutralized. [JA277 – 283]. Then, without identifying himself, Sgt. Moser discharged his firearm into Appellant's vehicle, striking the Appellant in his arm. [JA277 - 281].

Viewing the totality of the evidence presented and drawing all reasonable inferences from the evidence in a light most favorable to Appellant, Mr. Payne has presented sufficient evidence to establish that Sgt. Moser's violated his Fourth

Amendment Right to be free from Unlawful Search and Seizure, and therefore Appellee's Motion for Summary Judgment should have been denied.

**III.   The District Court erred in granting Summary Judgment as to Mr. Payne's Count 3 claim for Gross Negligence under State law, where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Payne.**

In granting the Motion for Summary Judgment and dismissing Count III of Mr. Payne's Complaint based on Gross Negligence, the District Court erred where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Payne.

The Court held that gross negligence claims rise and fall with the excessive force claim, and granted summary judgment following the same logic of the ruling on excessive force in Count I. For the same reasons outline in Section I above, viewing the totality of the evidence presented and drawing all reasonable inferences from the evidence in a light most favorable to the appellant, Mr. Payne has presented sufficient evidence to establish Sgt. Moser did not use an objectively reasonable amount of force to effectuate the Mr. Payne's arrest, and Appellee's Motion for Summary Judgment as to Count III should have been denied.

## <u>CONCLUSION</u>

Wherefore, for the reasons stated above, Appellant, Jeffrey Payne, respectfully requests that this Honorable Court reverse the trial court's Orders for

issuing an order of summary judgment for Appellant's claims and remand this case for further proceedings and trial on the merits.

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests oral argument. Appellant believes that his case involves a legal issue concerning public interest. A Motion for Summary Judgment, is sought by defendants in the majority of cases involving police conduct.

However, the task of determining whether the evidence produced by an Appellant could be persuasive to a reasonable factfinder, without engaging in the weighing of evidence, presents continuing challenge that requires guidance from the Court.

For that reason, Appellant believes that oral argument would be helpful in this case.

Respectfully submitted,

By: <u>Andrew O. Clarke, Esq.</u>
163 Waterfront Street, Suite 440
National Harbor, MD 20745
Tel: 202-780-9144
Email: aclarke@districtlegalgroup.com
*Counsel for Plaintiff-Appellant*

Date: May 30, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App.

P. 32(a)(7)(B) because this brief contains <u>4,940</u> words.

2.  This brief complies with the type face requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a mono-spaced type face using

Microsoft Word in 14 Times New Roman.

Respectfully submitted,

By: <u>Andrew O. Clarke, Esq.</u>
163 Waterfront Street, Suite 440
National Harbor, MD 20745
Tel: 202-780-9144
Email: aclarke@districtlegalgroup.com
*Counsel for Plaintiff-Appellant*

Date: May 30, 2025